## DELTA EQUIPMENT & CONSTRUCTION CO., Inc. v. UNITED STATES.
### No. 49962.

United States Court of Claims.
May 6, 1952.

---

Edward L. Koepenick, Washington, D. C., Landry & Landry, Baton Rouge, La., on the brief, for plaintiff.

C. C. Wood, Baton Rouge, La., for intervenors.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

JONES, Chief Judge.

A motion to dismiss plaintiff's petition in this case has been filed by the intervenor, the Board of Levee Commissioners of the Tensas Basin Levee District, State of Louisiana, hereinafter referred to as the Levee Board.[1]

According to the petition, on April 8, 1949, plaintiff entered into a contract with the United States in which it undertook to perform work in connection with a channel improvement project in the Parishes of Ouachita and Morehouse in the State of Louisiana. The contract called for the excavation by plaintiff of a drainage canal. Plaintiff received notice to proceed on the contract on June 11, 1949. On November 11, 1949, while only about seven days from the completion of the contract plaintiff was forcibly prevented from further excavation by one George Franklin, Jr., who appeared on the scene armed with a revolver and a double-barreled shotgun and informed plaintiff's employees that he was the owner of the land on which they were excavating the drainage canal and that they had better stop operations on his property. The petition does not disclose what portion of the contract work, if any, had been completed on Franklin's land prior to the forcible work stoppage on November 11, 1949, or whether plaintiff at any time prior to that date had actually made entry onto any land claimed by Franklin. Apparently the canal crossed a number of tracts of land owned by others. We gather not only from the pleadings, but also from the oral argument that the forcible work stoppage occurred immediately or soon after the excavation on Franklin's land began.

Plaintiff was thus halted in the performance of its work until a court order was obtained by the Levee Board enjoining Franklin from interfering with the progress of the work. Immediately after the forcible work stoppage occurred plaintiff requested that defendant relieve it of its obligation to perform the remaining work, but defendant's contracting officer insisted upon the immediate progress and completion of the contract. As a result of the forcible work stoppage plaintiff was un-

---

1. The Levee Board's motion for leave to intervene stated that it had a pecuniary interest in the action by virtue of an obligation contracted with the United States to save and hold the United States harmless from any and all damages resulting from or occasioned by the construction of the project in question.

able to perform any work under the contract for a period of 39½ days between November 11, 1949, and December 27, 1949, and it is averred that plaintiff thereby incurred damages in excess of $36,000 from labor, overhead, equipment rental, and other expenses. The time for completion was ultimately extended to February 17, 1950, and the work finally completed and accepted as of December 31, 1949.

Plaintiff alleges that the defendant has breached its duty under paragraph SC–13 of the specifications of the contract which states that "the lands, easements, and rights-of-way necessary for all the work under this contract will be provided without cost to the Contractor"; that plaintiff is entitled to an equitable adjustment of the contract price as provided in Article 4 of the contract by reason of changed conditions within the meaning of that article; and that defendant breached its duty to disclose to plaintiff that Franklin for a long time prior to the entering of the contract had vigorously disputed the right of the Levee Board to take his land, had contended the project was unnecessary and the procedure improper, and had maintained that he, Franklin, would carry the matter to the state courts, if the Levee Board persisted.

In connection with the last allegation plaintiff alleges further that the Levee Board was the agent of the defendant United States in the procurement of the rights-of-way for the drainage project (which the Levee Board conceded on oral argument of this motion); that the knowledge by the Levee Board of Franklin's claims is imputable to the United States; and that such material knowledge should have been imparted to the plaintiff who would either have not bid competitively on the job at all or would have bid at a higher amount more commensurate with the difficulty and expense encountered.

It appears that after Franklin's armed appearance upon the scene of the work, injunction proceedings were instituted against him by the Levee Board in the Louisiana State courts which ultimately terminated in a decision by the Supreme Court of Louisiana in favor of the Levee Board.[2] Under Louisiana law that court affirmed the legality of the appropriation by the Levee Board of Franklin's land for levee drainage purposes.

The Levee Board contends here on its motion to dismiss that since the appropriation of Franklin's land had been valid and it had had the right all along to make excavations on Franklin's land there was no failure on the part of the defendant to obtain and to provide the lands, easements, and rights-of-way necessary for the work under the contract. The Levee Board asserts further that plaintiff's contract contains no warranty, express or implied, against damage to plaintiff by the illegal acts of third persons who might interfere with plaintiff's progress. The Levee Board appears to view Franklin as a sort of armed trespasser for whose actions neither defendant nor the Levee Board can be held accountable to plaintiff. To so characterize Franklin in the circumstances of this case is an oversimplification. Franklin was no mere stranger to the events herein. He was the actual owner of the land through which the canal was being cut, acting through a claim of right, and it was known to the Levee Board at the time defendant contracted with plaintiff that Franklin objected to the work for which the contract called, and intended vigorously to oppose it on the grounds that the appropriation by the Levee Board of the right-of-way across his land was unlawful.

In support of its other contention that defendant had not failed to provide the necessary lands, easements, and rights-of-way, the Levee Board points to the action of the Supreme Court of Louisiana in upholding the legality of that appropriation. The fact that the appropriation of the right-of-way was ultimately determined to be valid, however, does not alter the fact that plaintiff

2. Board of Commissioners, etc., v. Franklin, 219 La. 859, 54 So.2d 125, appeal dismissed, 342 U.S. 844, 72 S.Ct. 80, per curiam, rehearing denied 342 U.S. 889, 72 S.Ct. 174. The appropriation appears to have been effected by notification to Franklin by registered mail that rights-of-way across his land were appropriated. It was this procedure, *inter alia*, that Franklin challenged unsuccessfully.

had actually been denied access to a contract work area for 39½ days, after receipt of defendant's notice to proceed and after plaintiff had actually commenced work on the project on the strength of defendant's representation and promise that the necessary rights-of-way and easements would be obtained and the land made available. It was defendant's obligation under SC–13 of the specifications of the contract to provide the necessary lands, easements, and rights-of-way without cost to plaintiff, and the petition shows that they were not available to plaintiff for a considerable period of time. This was by reason of action taken under a claim of right by the very landowner from whom the Levee Board was appropriating the lands, who had never conceded the right of the Levee Board to do so, and who had long and vigorously asserted his intention to oppose the appropriation if the Levee Board persisted in its action. Nor, it is alleged, was there any disclosure of these facts to plaintiff at the time it entered into the contract with the defendant. We believe the defendant's obligation must extend to interference by this landowner Franklin in the circumstances alleged here. The petition shows that the defendant failed to fulfill its obligation, and we think it states a claim upon which plaintiff is entitled to recover, depending, of course, upon the facts which a hearing may develop.

In reaching this conclusion we rely in part upon Weissbaum v. United States, 72 Ct.Cl. 423, where the United States, lessee of certain premises, upon abandonment of the use of the premises contracted with Weissbaum to deliver title and put Weissbaum in possession of certain improvements constructed thereon by the United States, for the purpose of wrecking and removing those improvements. The United States in that case, just as in the instant case, represented that Weissbaum would be given free access to the premises to perform the contract work. The Government's lessor, however, disputed the right of the Government to enter the premises to perform the wrecking and removal of the improvements, and the Government failed to reveal this fact to Weissbaum when it entered the contract. When Weissbaum's representatives sought to enter the premises the Government's lessor stopped them by the use of arms. Weissbaum was unable to enter the premises to perform his work until over two years later, when a United States District Court ruled against the lessor in favor of the United States. The Court of Claims thereafter awarded damages to Weissbaum against the United States. The same argument was made to the court and rejected in the Weissbaum case as the Levee Board has made in the instant case—that the United States was not liable because the damage was caused by the tortious acts of a third party. The court noted in the Weissbaum case, 72 Ct.Cl. at pages 436, 438, and 439:

"* * * These facts establish that there was a direct misrepresentation by the defendant of the conditions under which the work was to be performed. * * * This suit is not an action sounding in tort. The representation that the improvements were accessible and that the contractor would have free ingress and egress was the very foundation of the whole undertaking. The plaintiff did not pay * * * for a lawsuit. * * *

\* \* \* \* \* \*

"* * * In these circumstances it may not be said that the defendant is in nowise responsible to the plaintiff for his actual losses sustained by reason of the failure of the defendant to place him in possession of the improvements and to give him the right and uninterrupted privilege of removing the same.

\* \* \* \* \* \*

"* * * The position taken in this case by counsel for defendant that * * * whatever loss plaintiff sustained was due to the interference by a third person [the lessor], for which the United States was in nowise responsible, is overcome by the peculiar facts in this case and by the decision in favor of the Government in the district court in which the United States recovered a judgment * * * [against the lessor]. [Citing cases.]"

Under the allegations of the petition in the instant case, as in the Weissbaum case, the Levee Board knew prior to the execu-

tion by the United States of the contract with plaintiff, and the United States knew or was chargeable with the knowledge, that Franklin was disputing its right-of-way, and would vigorously resist the appropriation of his land. Although the Levee Board may have been confident of the ultimate outcome of the dispute, nevertheless plaintiff's performance was subject to substantial interference or interruption as a result of the dispute.[3] Franklin's claims had a material bearing upon plaintiff's undertaking, and the defendant's failure to impart knowledge thereof to plaintiff and to provide plaintiff with the necessary uninterrupted access to the work area ultimately resulted in damage to plaintiff. Whatever may be the outer limits of defendant's obligations under the contract with plaintiff, we think they are sufficiently broad to encompass the wrongs revealed by plaintiff's petition.

Accordingly the intervenor's motion to dismiss plaintiff's petition will be denied and an opportunity afforded for full development of the facts and circumstances surrounding plaintiff's claims. The case will be referred to a Commissioner of the court for such further proceedings as may be necessary.

It is so ordered.

HOWELL, MADDEN, and LITTLETON, Judges, concur.

3. Cf. Fred R. Comb Co. v. United States, 103 Ct.Cl. 174, holding the United States liable for negligently involving plaintiff contractor in litigation concerning the site of the work.

WHITAKER, Judge, (dissenting).

I cannot agree with the opinion of the majority. The Levee Board did furnish the right-of-way, as the defendant agreed would be done. Neither the defendant nor the Levee Board kept plaintiff off of it. This was done by one Franklin, a stranger to the contract, who was under the control of neither the defendant nor the Levee Board. It is true that Franklin denied the right of the Board to dig the canal through his property and threatened to prevent it, but the project had been under way for five months before he took any overt act to carry out his threat. For five months he had applied for no injunction, nor taken any other step to stop the work. He had done nothing up until the time the work was just seven days from completion. Then, under no warrant of law, he came out with a pistol on his side and a shotgun in his hand and, by force of arms, stopped the work.

This was a course of action the defendant should not be expected to have foreseen, especially since the man of arms was a substantial and respected citizen in a civilized community. As soon as he did take such action, the defendant immediately appealed to the courts to stop him and diligently prosecuted the case until he was stopped.

I do not see how the defendant could be expected to have done more.

Plaintiff's action, if any, is against Franklin, and not against the defendant.